54 CCPA

**In the Matter of the Application of Hermann SCHNELL, Hans Joachim Rehberg and Wilhelm Hechelhammer.**

**Patent Appeal No. 7702.**

United States Court of Customs and Patent Appeals.

Jan. 12, 1967.

———◇———

Connolly & Hutz, Wilmington, Del. (Earl Christensen, Wilmington, Del., of counsel), for appellants.

Joseph Schimmel, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

RICH, Judge.

This appeal is from a decision of the Patent Office Board of Appeals, affirming the rejection of claims 11–19 of application serial No. 660,767, filed May 22, 1957, entitled "Dental Prostheses and Dental Aids." No claim has been allowed.

The invention is a dental prosthetic device, for example, a denture, in which polycarbonate resin is employed in the manufacture of the "gum" portion. Claim 11 is typical:

> 11. A dental prosthesis device wherein an essential structure element thereof is composed of a linear high molecular weight fiber and film forming thermoplastic polycarbonate.

The examiner relied on the following references:

Becker — February 24, 1959
Bayer (Belgian) October 30, 1954
2,874,467
532,543

Becker discloses the manufacture of dentures with methyl methacrylate, a moldable thermoplastic material. These are said to have the advantage "of physiological and chemical indifference as well as of good mechanical properties."

Bayer teaches the manufacture of polycarbonates and fibers, films, and moldings thereof. The properties of the polycarbonates are described:

> The polycarbonates produced according to the invention are thermoplastic and elastic synthetic materials whose softening point or melting point and physical properties depend in large measure on the kind of di-monohydroxyaryl-alkane employed. They are soluble in a variety of organic solvents * * * and can be worked up from solutions into shaped articles such [as] films, fibers, etc., or into lacquer coatings. They melt without decomposition and can therefore be worked up into useful shaped articles or coatings by pressing, spraying, flame spraying, etc.

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

It is surprising to note that according to the present process \* \* \* there can be obtained crystallizable and linear polycarbonates from which films, fibers, etc., can be produced from the melt or solution, and which films, fibers, etc., can be oriented by stretching. The tensile strength of these products is significantly increased by the stretching process, whereas their elongation-to-break is decreased.

It is also disclosed that the polycarbonates form colorless, viscous, elastic materials.

The examiner was of the opinion that it would be obvious to use the polycarbonates of Bayer in forming the Becker denture inasmuch as no more was involved than the substitution of one moldable thermoplastic material for another. He stated:

The Bayer reference teaches that this material may be injection molded and can be formed into hard and solid films and fibers. It is also stated that it has small water absorption, high elasticity, stability of shape up to 180°C and is uncolored. Thus the material would not be affected by mouth fluids, would not be easily cracked or broken, could be sterilized without change of shape and would not have an unsuitable color. These are attributes which would indicate its usefulness in dental prosthesis to one skilled in the art. Once these properties are known the possible use of the material in dentistry would be obvious.

The board agreed. We agree.

Appellants argue that the question is whether there is any suggestion in the cited references to make the substitution of the materials. They urge that in the absence of an express suggestion there should be at least such a description of the properties of the polycarbonates that their use in dentures would be encouraged. They find the examiner's recitation of properties insufficient, pointing out to us that the Bayer reference does not disclose the "small water absorption" of polycarbonates.

■ We think, however, that the uncontroverted part of the examiner's analysis provided sufficient basis for a finding of obviousness under 35 U.S.C. § 103. Appellants' specification discusses the materials of the prior art, particularly polymethyl methacrylate, polyamides, and polyurethanes. It lists advantages and disadvantages. Polymethyl methacrylates have an undesirable capacity for water absorption and less than suitable mechanical properties. The polyurethanes and polyamides are marked by the disadvantages of high capacity for water absorption, some tendency toward changes in shape under strain, unsatisfactory appearance, and difficulty of repair. The obviousness of the use of polycarbonates in denture preparation would then hardly be foreclosed by the *possibility* that such dentures might have one or more of the disadvantages of the prior art material.

Appellants also argue that "The differences between the subject matter sought to be patented and the prior art are not obvious under section 103", indicating several differences in properties between their invention and the denture of Becker. The legal issue, of course, is not the obviousness of the *differences* between the invention and the prior art but the obviousness of *the invention as a whole,* taking those differences into account as section 103 clearly states.

■ On the record here, we agree with the Patent Office finding of obviousness to make this new use of a known material.

The decision of the board is affirmed.

Affirmed.